UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERESA MARIE B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> Commissioner of Social Security Administration,[2] <br> Defendant. | Case No. 2:22-cv-00473-DKG <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff filed a Complaint for judicial review of the Commissioner's denial of her application for disability and disability insurance benefits. (Dkt. 1). Having reviewed the Complaint, the parties' memoranda, and the administrative record (AR), the Court will reverse and remand the decision of the Commissioner for the reasons set forth below.

## BACKGROUND

On December 9, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on August 11,

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley became the Commissioner of Social Security Administration on December 20, 2023. Fed. R. Civ. P. 25(d).

**MEMORANDUM DECISION AND ORDER - 1**

2019. (AR 13). Plaintiff's application was denied initially and on reconsideration. A hearing was conducted on November 24, 2021, before Administrative Law Judge (ALJ) Marie Palachuk. (AR 13).[3]

After considering testimony from Plaintiff, a medical expert, and a vocational expert, the ALJ issued a written decision on December 22, 2021, finding Plaintiff not disabled. (AR 13-31). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Plaintiff was forty-three years of age on the alleged onset date. (Dkt. 29). Plaintiff is a high school graduate with some vocational training and past relevant work experience as a machinist, fruit press operator, and deli worker/stock clerk. (AR 29, 248, 255). Plaintiff claims disability due to spinal stenosis. (AR 240).

## THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the

---

[3] The hearing was conducted with the consent of the Plaintiff by online videoconference due to the Coronavirus Pandemic of 2019. (AR 13, 39).

Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 16). At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: degenerative disk disease of the cervical spine and chronic dysesthesia[4] of the left upper extremity. (AR 16).

At step three, the ALJ determined that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 16). The ALJ next found Plaintiff retained the Residual Functional Capacity (RFC) for light work with the following limitations:

> [claimant] can occasionally lift up to 30 pounds; can frequently push and pull with left non-dominate upper extremity; can frequently perform posturals except can never climb ladders, ropers [sic], or scaffolds; can occasionally reach in all directions with the left upper extremity; can frequently handle and finger with the left upper extremity; and must avoid all exposure to extreme cold, industrial vibration, and hazards.

(AR 16).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work as a machinist, fruit press operator, or deli worker/stock clerk as actually and generally

---

[4] Dysesthesia is defined as: "Painful sensations elicited by a nonpainful cutaneous stimulus such as a light touch or gentle stroking over affected areas of the body. Sometimes referred to as hyperpathia or hyperalgesia. Often perceived as an intense burning, dysesthesias may outlast the stimulus by several seconds." https://www.ncbi.nlm.nih.gov/medgen/97901 (Last visited June 3, 2024).

**MEMORANDUM DECISION AND ORDER - 3**

performed. (AR 29). Relying on the vocational expert, the ALJ found that other jobs exist in significant numbers in the national economy that Plaintiff can perform given her age, education, work experience, and RFC, such as: office cleaner, parking lot attendant, and photo finishing counter clerk. (AR 29-30). The ALJ therefore determined Plaintiff was not disabled from the alleged onset date through the date of the decision. (AR 30-31).

## ISSUES FOR REVIEW

1. Whether the ALJ's committed harmful error at step two.

2. Whether the ALJ properly considered Plaintiff's subjective symptom allegations.

3. Whether the ALJ properly evaluated the medical opinion evidence.

4. Whether the RFC is supported by substantial evidence.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533

**MEMORANDUM DECISION AND ORDER - 4**

F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

## DISCUSSION

1.  **The ALJ Committed Harmful Error at Step Two**

    A.  **Legal Standard**

    At step two, the ALJ determines if the claimant has a severe medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). To satisfy the severity requirement, the claimant must prove the impairment by providing objective medical evidence; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 404.1521. An impairment is considered "severe" if a claimant's physical or mental ability to complete basic work activities are significantly limited. 20 C.F.R. § 404.1520(c). Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as walking, sitting, lifting, speaking, remembering simple instructions, using judgment, and adapting to changes in a routine work setting. 20 C.F.R. § 404.1522.

    The purpose of this step is to filter out claims that are too weak to be eligible for disability benefits. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims."). If the analysis proceeds past step two, the lack of severity classification will usually be immaterial because step two "is not meant to identify the impairments that should be taken into

**MEMORANDUM DECISION AND ORDER - 5**

account when determining the RFC." *Id*. at 1048-49. Rather, when assessing the RFC, the ALJ must consider all limitations and restrictions imposed by reason of an individual's medically determinable impairment or combination of impairments, even those not characterized as severe. *Id*. at 1049; SSR 96-8p.

**B. Analysis**

Plaintiff argues the ALJ erred by failing to find her complex regional pain syndrome (CRPS)[5] was a medically determinable impairment at step two, and failing to evaluate her CRPS under SSR 03-2p. (Dkt. 13). Defendant contends Plaintiff has not shown harmful error in the ALJ's step two finding. (Dkt. 18).

Under SSR 03-2p, CRPS "constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings," but "may not be established on the basis of an individual's statement of symptoms alone." SSR 03-2p. For purposes of Social Security disability evaluation, CRPS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitant and one or more of the following clinically documented signs in the affected region: swelling, autonomic instability, abnormal hair or nail growth, osteoporosis, or involuntary movements of the

---

[5] "CRPS is a chronic pain syndrome most often resulting from trauma to a single extremity [and] can also result from diseases, surgery, or injury," including a minor injury. SSR 03-2p. CRPS is "a rare neurologic disease painful progressive condition that corresponds to a group of disorders characterized by a disproportionate spontaneous or stimulus-induced pain, accompanied by a variably mixed myriad of autonomic and motor disorders including symptoms such as swelling, allodynia, skin blood supply and trophic disturbances. CRPS most often affects one of the arms, legs, hands, or feet and usually occurs after an injury or trauma to that limb." https://www.ncbi.nlm.nih.gov/medgen/96846 (last visited June 3, 2024).

affected region. SSR 03-2p.

The record in this case plainly shows Plaintiff was diagnosed with CRPS in approximately August or September of 2021, with symptoms of chronic pain in the neck and left shoulder dating back to 2019. (AR 24, 664-673, 695-697.) Plaintiff first presented to her primary care provider with left shoulder pain in August of 2019, possibly attributable to a chiropractic adjustment. (AR 345, 521, 526, 536, 553). Pain medication injections were administered, and she was prescribed oral medications to treat her neck and left shoulder pain. (AR 335-344). Thereafter, between September 2019 and October 2021, Plaintiff received ongoing testing and multiple forms of treatments for chronic neck and left shoulder pain, including: MRIs, physical therapy, epidural steroid injections, trigger point injections, chiropractic care, and pain management. (AR 345-357, 367-419, 455-538, 542-552, 673, 760-778). Plaintiff reported certain treatments provided some temporary relief, but the overall longitudinal record reflects that Plaintiff's pain was unresolved with the various treatments and medications. (AR 521, 538, 674, 681, 687). Notably, multiple treatment records reported swelling and muscle spasms in the left upper extremity region. (AR 521, 524, 674, 677, 684, 690, 711, 715, 717, 719, 725, 733, 735, 737, 739, 741, 763); SSR 03-2p (listing complaints of pain associated with swelling and involuntary movements of the affected region of the initial injury as diagnostic criteria for CRPS).

The first treatment provider to mention CRPS was Dr. Benjamin, a neurologist in Coeur d'Alene, Idaho. (AR 696-697). Jeffrey Ispirescu, M.D., a treating pain specialist, agreed with Dr. Benjamin on August 18, 2021. (AR 696-697). On September 28, 2021

**MEMORANDUM DECISION AND ORDER - 7**

and October 19, 2021, Plaintiff's medical pain treatment provider, Mary Reindollar, PAC, and her treating medical physician, Ligeia Reinhardt, M.D., each authored opinions concluding Plaintiff suffers from CRPS and offering similar descriptions of her symptoms and limitations. (AR 664-668, 669-673). Reindollar's treatment record further noted Plaintiff has "a history of CRPS." (AR 706).

Despite this clear evidence in the record of CRPS, the ALJ did not identify Plaintiff's CRPS as a medically determinable impairment and made no mention of the condition at step two. (AR 16). Indeed, the written decision contains no discussion of Plaintiff's CRPS and offers only passing references to CRPS in summarizing the medical evidence and medical opinions of her physician and treatment provider. (AR 24, 27). Tellingly, the decision does not mention, let alone apply, SSR 03-2p. The Court finds the ALJ's failure to discuss CRPS and apply SSR 03-2p was error. *See Gina J. M. v. Comm'r Soc. Sec. Admin.*, 2023 WL 2014357, at *2 (W.D. Wash. Feb. 15, 2024); *Amber P. v. Kijakazi*, 2023 WL 2728720, at *2-3 (S.D. Cal. March 30, 2023); *Boulanger v. Astrue*, 2009 WL 1393211, at *4-5, 9 (E.D. Cal. May 15, 2009); *Keen v. Kijakazi*, 2023 WL 2182966, at *7 (N.D. Fla. Feb. 23, 2023).

In so concluding, the Court is mindful that the step-two inquiry is "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Nevertheless, if the ALJ concluded that Plaintiff's CRPS was not a medically determinable impairment, despite the records discussed above supporting the diagnosis, the ALJ should have explained the reasons underlying that conclusion and discussed SSR 03-2p. The absence of any discussion of CRPS at step two and failure to

**MEMORANDUM DECISION AND ORDER - 8**

address SSR 03-2p was erroneous. *See e.g. Gina J. M.*, 2023 WL 2014357, at *2 (citing *Givens v. Kijakazi*, 2022 WL 1486829, at *1 (9th Cir. May 11, 2022); *Saffaie v. Berryhill*, 721 F. App'x. 709, 710 (9th Cir. 2018)).

Further, there is no discussion or analysis in the written decision from which the Court can reasonably discern or infer that the ALJ considered Plaintiff's CRPS and applied SSR 03-2p. Indeed, just the opposite appears to be true. The ALJ discredits Plaintiff's symptom statements and the medical opinions of her treatment providers based on conflicting evidence and points out that her pain complaints were inconsistent and unexplained. (AR 18-29). However, SSR 03-2p instructs that it is characteristic of CRPS for the degree of pain reported to be out of proportion with the severity of the injury. Further, SSR 03-2p provides that signs of CRPS "are not present continuously, or the signs may be present at one examination and not appear at another," and that "conflicting evidence in the medical record is not unusual…due to the transitory nature of its objective findings and the complicated diagnostic process involved." Thus, the ALJ's decision is seemingly in conflict with SSR 03-2p. Further, SSR 03-2p provides guidance for evaluating the behavioral and cognitive effects of the medications used to treat pain in the context of CRPS. While the ALJ addressed Plaintiff's alleged mental and cognitive limitations, it is unclear from the written decision whether the ALJ considered and applied SSR 03-2p's direction for evaluating the mental limitations associated with CRPS. In sum, because there is no discussion of CRPS or SSR 03-2p in the written decision, it is impossible to determine whether the ALJ's reasoning and conclusion were a proper application of the regulations and supported by substantial evidence.

**MEMORANDUM DECISION AND ORDER - 9**

The error found herein was not harmless, because it was not "inconsequential to the ultimate nondisability determination." *Givens*, 2022 WL 1486829, at *1 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). The failure to discuss Plaintiff's CRPS at step two and to apply SSR 03-2p, undermines the ALJ's evaluations of the medical opinion evidence, Plaintiff's symptom statements, and the RFC determination. *Keen*, 2023 WL 2182966, at *8.[6] Consequently, the ALJ's reasoning and decision concerning Plaintiff's functional limitations and the ultimate disability determination are unsupported. Further, the ALJ did not address all of the functional limitations alleged to be related to Plaintiff's CRPS, such as: her ability to sit, need to shift positions, and time off task.

Defendant's argument that the error at step two was harmless because the ALJ "considered all symptoms – including those Plaintiff attributed to CRPS" at step four is contrary to the regulations. (Dkt. 18 at 4). Defendant's contention fails to appreciate the distinction between an ALJ's finding that an alleged impairment is not medically determinable, with a finding that a medically determinable impairment is not severe. *Vargas v. Saul*, 2020 WL 5521039, at *6 (D. Idaho Sept. 14, 2020) (citing *Moore v. Berryhill*, 2018 WL 2106470, at *2 (C.D. Cal. May 7, 2018)); 20 C.F.R. § 404.1521. Those two independent findings have differing impacts on the five step sequential

---

[6] Having found that remand is warranted based on the first issue, the Court declines to address Plaintiff's other assignments of error. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008).

analysis. 20 C.F.R. 404.1520. This is because, in assessing the RFC, the ALJ considers only a claimant's "impairment(s), and any related symptoms," found to be medically determinable, even if not deemed severe. 20 C.F.R. § 404.1545(a)(1), (2). Because the ALJ did not identify CRPS as a medically determinable impairment at step two, the ALJ did not consider it when deciding the RFC. *Keen*, 2023 WL 2182966, at *7-8. Consequently, the step two finding that Plaintiff's CRPS was not a medically determinable impairment undercuts Defendant's reasoning that the ALJ's stated consideration of all of Plaintiff's symptoms at the later steps included her CRPS. (Dkt. 18 at 4.)

Instead, under the regulations, the determination that Plaintiff's CRPS was not medically determinable means the ALJ did not incorporate her alleged limitations from CRPS into the RFC. *See e.g., Vargas*, 2020 WL 5521039, at *6 (citing *Butler v. Colvin*, 2016 WL 8232243, at *4–5 (E.D. Wash. Aug. 23, 2016) ("[B]y classifying Plaintiff's fibromyalgia as a non-medically determinable impairment—rather than a severe or non-severe impairment—the ALJ excluded the effects of this condition when formulating Plaintiff's RFC, rendering the ALJ's RFC finding suspect"); *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (erroneous exclusion of impairment at step two rendered RFC determination incomplete, flawed, and not supported by substantial evidence in the record); *Kerley v. Berryhill*, No. 2:16-CV-01841 JRC, 2017 WL 3128390, at *4 (W.D. Wash. July 24, 2017) (failure to find fibromyalgia was a medically determinable impairment at step two rendered RFC determination incomplete – ALJ did not credit Petitioner's fibromyalgia symptoms fully)).

**MEMORANDUM DECISION AND ORDER - 11**

Based on the foregoing, the Court concludes that the ALJ harmfully erred. Accordingly, the decision of the Commissioner must be reversed.

2.      **Remand For Additional Proceedings is Appropriate**

Plaintiff requests reversal or remand. (Dkt. 13). Generally, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). The decision whether to remand for further proceedings or award immediate benefits is within the discretion of the Court. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). Remand for a direct award of benefits is generally proper where no useful purpose would be served by further administrative proceedings, or where the record has fully developed. *Id.* at 682-83. However, in cases where further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).

Upon a careful review, the Court finds remand for further proceedings is appropriate here. The evidence in this case does not conclusively establish that Plaintiff is disabled under the Social Security disability regulations. Rather, there is evidence that must be weighed and evaluated properly by the ALJ in the first instance, making remand for an immediate award of benefits inappropriate. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for proceedings rather than for an immediate award of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities."). Thus, there is not sufficient evidence to direct a finding that Plaintiff is disabled and entitled to an

award of benefits. Further, there is evidence in the record that may support a finding that the functional limitations resulting from Plaintiff's impairments could be accounted for in the RFC assessment and would not prevent Plaintiff from engaging in substantial gainful activity. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (Remand is appropriate "when the record as a whole creates serious doubts as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.").

For these reasons, the Court will reverse and remand the ALJ's decision for further administrative proceedings. The ALJ should reassess the entire record in making the disability determination on remand.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that:

1. The decision of the Commissioner of Social Security is **REVERSED**.

2. This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3. This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: June 13, 2024

Honorable Debora K. Grasham
United States Magistrate Judge